BEVINS et al. v. PRINDABLE, Sheriff, et al.
No. 383.

District Court, E. D. Illinois.
June 17, 1941.

Hayden C. Covington, of Brooklyn, N. Y., Walter Grossman, of Belleville, Ill., and Louis Orr, of East St. Louis, Ill., for plaintiffs.

Harry Flanders, of Eldorado, Ill., for defendant officials of Saline County, Ill.

George F. Kelling, of Belleville, Ill., for defendant officials of St. Clair County, Ill.

Montgomery S. Winning, of Springfield, Ill., for defendant officials of State of Illinois.

Before EVANS, Circuit Judge, and LINDLEY and WHAM, District Judges.

PER CURIAM.

This is a suit by members of a group known as Jehovah's Witnesses on behalf of themselves and others of the same group seeking to enjoin defendants, who are officials of the State of Illinois and of St. Clair and Saline Counties in said state, from enforcing in said counties section 471, chapter 38 of the Revised Statutes of Illinois, in a manner that will interfere with the distribution in said counties by Jehovah's Witnesses of books and pamphlets published by the Watchtower Bible and Tract Society, Incorporated. The case is now before this statutory three-judge court upon plaintiffs' application for an interlocutory injunction after notice to defendants and after hearing upon affidavits.

The principal grounds upon which the injunction is sought are as follows: (1) That said statute is invalid and void under the Fourteenth Amendment of the Constitution of the United States. (2) That said statute is void on its face because vague and indefinite. (3) That said statute, as construed and applied by the defendants to plaintiffs and others of Jehovah's Witnesses in St. Clair and Saline Counties, Illinois, deprives them of their civil rights of freedom of worship, speech, press and assembly. (4) That defendants have threatened to continue to enforce said statute and make further arrests and prosecutions if plaintiffs distribute Watchtower literature in St. Clair and Saline Counties and unless defendants are enjoined plaintiffs will suffer great and irreparable loss and injury.

Jurisdiction is claimed under the federal statute which gives federal district courts jurisdiction of suits at law or equity brought by any person to redress the deprivation of civil rights secured by the Constitution of the United States under color of a statute of a State. 28 U.S.C.A. § 41, par. 14. In view of nature of the suit as outlined the claim seems well grounded. Hague v. Committee for Industrial Organization, 306 U.S. 624, 59 S. Ct. 486, 83 L.Ed. 1028.

Plaintiffs seek by interlocutory injunction to restrain the enforcement of a state statute by the qualified and acting officers of the state by reason of its alleged unconstitutionality. Upon application of the plaintiffs and as required by section 266 of the Judicial Code, 28 U.S.C.A. § 380, a statutory three-judge court was organized to hear the case.

Prior to the hearing defendants filed separate motions to dismiss the complaint for insufficiency. We are of opinion that disposition of said case should be made on its merits rather than upon the pleadings or upon a question of law and, therefore, deny said motions to dismiss.

Defendants Dwight H. Green and George F. Barrett, Governor and Attorney General, respectively, of the State of Illinois, urge that, since the complaint avers that neither of them actually participated in the alleged wrongs of which complaint is made and that neither of them have made threats of future action against the

plaintiffs, they are not proper parties defendant. Whether or not they are indispensable parties, as contended by plaintiffs, or even necessary parties, we are of opinion that in view of the fact that plaintiffs attack the constitutionality of a statute of the State of Illinois and seek to enjoin its enforcement said defendants, in their official capacities, are proper parties. 28 U.S.C.A. § 380; Arneson v. Denny, D.C., 25 F.2d 993. Since these defendants are not charged with having actually done or threatened to do anything of which plaintiffs complain the term "defendants" when used hereafter will refer to the other defendants only.

The essential facts are these: The plaintiffs and others who belong to a group known as Jehovah's Witnesses have for many years distributed in all the counties of Illinois, including St. Clair and Saline, books, pamphlets and other literature published by the Watchtower Bible and Tract Society, Incorporated. Sometimes they work in large groups coming into a community from surrounding counties and states. Each of them regards himself as a duly ordained minister of the gospel and carries credentials as such from said Watchtower Bible and Tract Society, Incorporated. Each believes it to be his divinely required duty to worship God and to witness for Him by distributing said Watchtower literature on the streets and from house to house.

In the months of June, September and December, 1940, plaintiffs and others of Jehovah's Witnesses were pursuing their ministry by distributing Watchtower books, pamphlets and periodicals on the streets and from house to house in the cities of Belleville, St. Clair County, Illinois, and of Harrisburg, Saline County, Illinois. At times phonograph records were used. Some of them sold Bibles. They did not sell the Watchtower literature but received contributions which was the means of a livelihood for those who were full time ministers. Said books, pamphlets, periodicals, records and other literature set forth the beliefs and doctrines of Jehovah's Witnesses. Some of them also contained drastic denunciations of all religion and religious organizations, as "a snare and a racket of the very worst kind," with particularly bitter and virulent attacks upon the Roman Catholic Church; also accusations which in substance and effect were charges of treasonable disloyalty, and deceptive and dishonest teaching and practices on the part of the leaders of both the Catholic and Protestant Churches and particularly those of the Catholic Church. Plaintiffs and others of Jehovah's Witnesses are taught and believe that it partakes of idolatry to salute the flag and not only refuse so to do but teach the doctrine.

Resentment was aroused among some of those whom they canvassed by the attacks contained in said literature upon religion, churches and church leaders. Some, particularly in Harrisburg, were incensed by their attitude toward the practice of saluting the flag. Complaints were made to those of the defendants who were law enforcing officers in both counties by those who were offended by the attacks upon religion and the Catholic and Protestant churches and upon their leaders contained in the literature so distributed, warning of violence against the persons distributing said literature unless such distribution ceased and requesting the officers to take steps to stop it. Investigations by the officers were followed by arrests and preferment of charges against plaintiffs of violating the Illinois criminal statute, section 471, chapter 38, Illinois Revised Statutes, which reads: "It shall be unlawful for any person, firm or corporation to manufacture, sell, or offer for sale, advertise or publish, present or exhibit in any public place in this state any lithograph, moving picture, play, drama or sketch, which publication or exhibition portrays depravity, criminality, unchastity, or lack of virtue of a class of citizens, of any race, color, creed or religion which said publication or exhibition exposes the citizens of any race, color, creed or religion to contempt, derision, or obloquy or which is productive of breach of the peace or riots. Any person, firm or corporation violating any of the provisions of this section, shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than fifty dollars ($50.00), nor more than two hundred dollars ($200.00)."

Typical of the charging part of the complaints under which plaintiffs were prosecuted is the following: " * * * that Emma Wilson, Charles R. Leiwe, Charles A. Davis, Ernest Summers on, to-wit, the 31st day of August 1940, at the County aforesaid then and there unlawfully advertise, sell or offer for sale a certain sketch which publication portrays depravity, criminality, unchastity or lack of

virtue of a class of citizens belonging to the Roman Catholic religion, which said publication exposes the citizens of said religion to contempt, derision or obloquy and which is productive of breach of the peace or riot contrary to the form of the statute in such case made and provided and against the peace and dignity of the same People of the State of Illinois."

In the city of Belleville twenty-three of Jehovah's Witnesses were arrested, charged with violation of said statute and released on bond. These cases have not been brought to trial and plaintiffs have made no showing of any effort to procure trials though the cases have been pending since June, 1940, or shortly thereafter. In Harrisburg, Saline County, three of Jehovah's Witnesses were arrested, brought to trial, found guilty and sentenced to pay fines. These cases had been pending on appeal for several months at the time of the hearing herein and no showing of effort on the part of plaintiffs to obtain trial of these cases appears from the evidence. Certain of the defendants in each of said counties have told plaintiffs they will continue to arrest and prosecute any of Jehovah's Witnesses found distributing Watchtower literature in his county. Ever since and by reason of the said arrests, prosecutions and threats of future prosecutions plaintiffs have refrained from distributing said literature in said counties and say that by reason of the wrongful acts and threats of defendants they have been deprived by defendants of their rights of free speech, press, assembly, worship and their right, in connection with the distribution of said literature, to receive money contributions upon which some of them rely for a livelihood; also that unless further arrests and prosecutions are restrained by interlocutory injunction they will suffer irreparable damage and loss pending final hearing.

Plaintiffs deny that they have violated the statute in question, when it is properly construed, and say that if said statute is construed to forbid the distribution of Watchtower literature it is unconstitutional and void.

■ We have found under the evidence that defendants do not threaten or intend to arrest plaintiffs or any of them for distributing Watchtower literature in either of said counties unless the literature contains matter which, in the opinion of the state's attorney of the county, constitutes a publication in violation of said section 471 of chapter 38 of the Revised Statutes of Illinois and not then until a supposed offense has actually been committed. We have further found that the acts of the defendants in connection with the investigation, warning, arrest, detention and prosecution of the plaintiffs were official acts performed in good faith in an honest endeavor to carry out their official duties as law enforcing officers; also that defendants honestly believed that the publication of the virulent attacks upon churches and religious leaders contained in the Watchtower literature being distributed by plaintiffs constituted a violation of said section 471; also that they feared and had a reasonable basis for fear that if the distribution of the literature containing such attacks continued, riots, assaults and breaches of the peace would ensue.

■ While the evidence does show that the defendants who are local law enforcing officers will continue to enforce the statute in their respective counties when advised by the state's attorney that the statute is actually being violated, the evidence fails to show that any extensive injury will be suffered by any of the plaintiffs or others on behalf of whom they bring this suit by such enforcement pending final hearing herein or a determination of the constitutionality of the statute and its applicability to the plaintiffs by the courts of Illinois. Plaintiffs are at liberty, so far as the evidence shows, to propagate their beliefs, distribute their literature and receive contributions anywhere outside of St. Clair and Saline Counties. The evidence indicates a practice among them of working away from home. Some of the plaintiffs are from other states. In view of this practice and the fact that the effect of the allegedly wrongful acts of defendants is confined to the counties of St. Clair and Saline, it would seem that the probable loss and injury to plaintiffs that will flow from the threatened acts of the defendants pending final hearing need not be great. Furthermore, it does not appear from the evidence that it is essential for the plaintiffs to distribute literature which belabors existing churches and their leaders with defamatory charges and epithets in order to perform their ministry; nor that there may not be a great deal of Watchtower literature for them to distribute that would be considered legally inoffensive. None of the defendants has indicated any design

to interfere with any witnessing by plaintiffs in accordance with their beliefs unless such witnessing is accompanied by violations or supposed violations of existing law.

■ In the view we take of the case under the evidence we do not find it now necessary to consider the constitutionality of the statute. In passing, however, we do say that it is not clearly apparent that the statute in question is unconstitutional. Plaintiffs say it is vague and indefinite. There is truth in the charge but the statute deals with a type of offense that defies exact definitiveness. In that respect it is similar to statutes creating the offense of criminal libel. Chapter 38, section 402, Illinois Revised Statutes, 1939. Whether a statute of the State of Illinois is valid which makes the defamation of a class a criminal offense would seem first to be a question for the courts of Illinois. This statute does not subject the plaintiffs to "previous restraint" such as received the condemnation of the Supreme Court in Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949; Hague v. Committee for Industrial Organization, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423; Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352 and in Schneider v. State of New Jersey, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155. It requires no license for seeking contributions or for distribution of literature and no administrative censorship is provided. Until the statute has actually been violated or reasonable grounds exist for believing that the statute has been violated or that such violation is imminent, there can be no proper official interference with the distribution of the literature and such interference must be limited to the distribution of literature that offends the statute. It does not condemn publication of all literature as did the ordinance condemned in Lovell v. Griffin, supra, but is limited to publications having the nature and content described in the statute.

■ But if the statute were clearly unconstitutional, it would not necessarily follow that the interlocutory injunction here prayed for should issue from this court. The general rule is that equity will not interfere to prevent the enforcement of a criminal statute. Hygrade Provision Company v. Sherman, 266 U.S. 497, 45 S.Ct. 141, 69 L.Ed. 402. This may be done only under extraordinary circumstances

where the danger of irreparable loss is both great and immediate. Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927; Watson et al. v. Buck et al., 61 S.Ct. 962, 85 L.Ed. ——, decided by United States Supreme Court May 26, 1941. In Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, at page 95, 55 S.Ct. 678, at page 680, 79 L.Ed. 1322, the court said: "The general rule is that equity will not interfere to prevent the enforcement of a criminal statute even though unconstitutional. * * * To justify such interference there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights. * * * We have said that it must appear that 'the danger of irreparable loss is both great and immediate'; otherwise, the accused should first set up his defense in the state court, even though the validity of a statute is challenged. There is ample opportunity for ultimate review by this Court of federal questions."

Here the danger of irreparable loss is neither great nor immediate and such loss as may be threatened can be obviated in large measure by the plaintiffs themselves, if they so desire, pending the hearing of the case on its merits or the authoritative construction of the statute by the courts of the State.

In the recent case of Beal v. Missouri R. Corporation, 312 U.S. 45, 61 S.Ct. 418, 420, 85 L.Ed. ——, the court said:

"It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. * * * No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid. * * *

"The federal courts are without jurisdiction to try alleged criminal violations of state statutes. The state courts are the final arbiters of their meaning and appropriate application, subject only to review by this Court if such construction or application is appropriately challenged on constitutional grounds. * * * Hence interference with the processes of the criminal law in state courts, in whose control they are lodged by the Constitution, and the determination of questions of criminal

liability under state law by federal courts of equity can be justified only in most exceptional circumstances, and upon clear showing that an injunction is necessary in order to prevent irreparable injury. * * * And in the exercise of the sound discretion, which guides the determination of courts of equity, scrupulous regard must be had for the rightful independence of state governments and a remedy infringing that independence which might otherwise be given should be withheld if sought on slight or inconsequential grounds. Di Giovanni v. Camden [Fire] Ins. Asso., 296 U.S. 64, 73, 56 S.Ct. 1, 5, 80 L.Ed. 47, * * *."

The reluctance of the federal courts to construe or pass upon the validity of a state statute or a principle of law involving state policies or local property rules, when the construction or application of such statute or principle by the state courts which will not only be authoritative but may remove all proper constitutional objections is readily obtainable, is well illustrated by recent decisions of the Supreme Court. Railroad Commission of Texas v. Pullman Company, 61 S.Ct. 643, 85 L.Ed. ——; Thompson v. Magnolia Petroleum Company, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876. In the former case the court said [61 S.Ct. 645, 85 L.Ed. ——]: "In this situation a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication. * * * The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court."

The case of Thompson v. Magnolia Petroleum Company, supra [309 U.S. 478, 60 S.Ct. 630, 84 L.Ed. 876], arose in a court of bankruptcy where the court had "exclusive and nondelegable control over the administration of an estate in its possession," yet the Supreme Court was of opinion that an undetermined question of Illinois real estate law should be sent to the courts of Illinois for decision instead of being resolved by the bankruptcy court. See, also, Achtien v. Dowd, 7 Cir., 117 F.2d 989.

The record shows that there are a score or more of cases against plaintiffs pending in the courts of Illinois each presenting an opportunity for a speedy determination of the validity, meaning and proper application of the statute in question in so far as plaintiffs' rights are affected. Should the decision of the Illinois courts be unsatisfactory, a review of the federal questions by the Supreme Court of the United States will be available. In our view of the case, under the evidence now before the court, the circumstances are not of that exceptional character that justifies an interference by the federal courts when the way is open for plaintiffs to secure a prompt adjudication of their rights in the courts of Illinois.

Plaintiffs assert that they have not violated the Illinois statute in question when properly construed. The Illinois Supreme Court alone can declare with final authority the meaning and applicability of the statute. As said by the United States Supreme Court in Watson et al. v. Buck et al., 61 S.Ct. 962, 967, 85 L.Ed ——, decided May 26, 1941, in an injunction suit which arose in the State of Florida, we say here, "It is highly desirable that it should have an opportunity to do so."

The precise question presented to us now takes form as follows: Should an application for an interlocutory injunction restraining state officers from enforcing a state criminal statute be allowed where the statute is not clearly unconstitutional and where the evidence shows that though some injuries and loss may be suffered by plaintiffs, through the enforcement of the statute, which may, because of their nature, be irreparable, it fails to appear that such injuries and loss need be more than slight or inconsequential? We think the question must be answered in the negative and the application for interlocutory injunction denied.

The situation is fully disclosed by the pleadings, the affidavits, and the admissions. It would seem that the parties might stipulate that the hearing on the application for temporary injunction be viewed as an application for a permanent injunction.