**Mary DOE et al.,**

**v.**

**Arthur K. BOLTON, as Attorney General of the State of Georgia, Lewis R. Slaton as District Attorney of Fulton County, Georgia and Herbert T. Jenkins, as Chief of Police of the City of Atlanta.**

**Civ. A. No. 13676.**

United States District Court,
N. D. Georgia,
Atlanta Division.

July 31, 1970.

Supplemental Opinion Oct. 14, 1970.

Margie Pitts Hames, Tobiane Schwartz, Elizabeth Rindskopf, Bettye Kehrer, Atlanta, Ga., for plaintiffs.

Arthur K. Bolton, Atty. Gen., Tony H. Hight, Asst. Dist. Atty., Atlanta, Ga., for Slaton.

Ralph H. Witt, Atlanta, Ga., for Jenkins.

Ferdinand Buckley, Atlanta, Ga., for unborn child of Mary Doe.

Before MORGAN, Circuit Judge, and SMITH and HENDERSON, District Judges.

PER CURIAM.

This is an action for declaratory and injunctive relief brought pursuant to 28 U.S.C.A. §§ 2201 and 2202, and 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 1343. It is a class action attacking Ga. Code Ann. § 26–1201 et seq. (1969) Georgia's "Abortion Act."

Plaintiffs claim to represent four sub-classes: pregnant women, single or married, wishing legal abortions; licensed physicians who wish to perform or counsel performance of legal abortions; registered nurses who desire to participate in performing or counsel

performance of legal abortions; and ministers and social workers who wish to be free to advise abortion in counselling pregnant women.

Plaintiffs seek an order declaring Georgia's Abortion Statute unconstitutional and enjoining its enforcement on various grounds:

(1) the Statute is unconstitutionally vague and indefinite on its face and as applied, failing to provide sufficient warning of the conduct proscribed, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

(2) Georgia's Abortion Statute unconstitutionally abridges a woman's right to decide to terminate an unwanted pregnancy, in restricting that fundamental liberty without an overriding compelling state interest;

(3) the Statute unconstitutionally restricts the right of the physicians, nurses, ministers and social workers to practice their professions;

(4) Georgia's Abortion Statute produces discrimination against poor and non-white women in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## PENDING MOTIONS

Arthur K. Bolton, sued in his official capacity as Attorney General of Georgia has moved for an order dismissing the claim against him on the ground that no relief could be granted against him since he is not charged generally with the enforcement, application or administration of the Georgia criminal statutes.

As plaintiffs observe, Article VI, § X, Par. II of the Georgia Constitution, Ga. Code Ann. § 2–4502 (1933) requires the Attorney General to represent the State in any civil or criminal case when required by the Governor. Furthermore, he may be required to give the Governor advisory opinions on the abortion statute. Ga. Code Ann. § 40–1602 (1933). Finally, the Attorney General is head of the Department of Law, which is vested with authority and jurisdiction in all matters of law relating to governmental departments, boards and agencies. Ga. Code Ann. § 40–1614 (1943). The Attorney General has sufficient connection with enforcement of the statutes attacked to justify retaining him as a party.[1] See Arneson v. Denny, 25 F.2d 993 (W.D.Wash.1928); Jackson v. Colorado, 294 F.Supp. 1065, 1072 (D.Colo.1968); James v. Almond, 170 F.Supp. 331, 341–342 (E.D.Va.1959); International Longshoremen's & Warehousemen's Union v. Ackerman, 82 F. Supp. 65, 124 (D.Haw.1948), rev'd on other grounds 187 F.2d 860 (9th Cir. 1951); Bevins v. Prindable, 39 F.Supp. 708, 710 (E.D.Ill.1941). Accordingly, that motion is denied.

The Attorney General has also objected to interrogatories which plaintiffs served for answer by a witness, Roger Rochat, M. D. In view of the disposition of this case made below, no ruling on this motion is necessary.

The motion of Ferdinand Buckley, Esquire, for reconsideration of the revocation of his appointment as guardian ad litem will be dealt with in connection with the discussion under MERITS below.

The motion of the National Legal Program on Health Problems of the Poor to submit a brief as *amicus curiae* is granted.

The defendant Lewis R. Slaton, District Attorney of Fulton County, filed motions seeking orders requiring disclosure of plaintiff's identity, granting a continuance for discovery for a reasonable time thereafter, and requiring plaintiff to submit to a physical and mental examination. In view of the reasons for which it is held that the complaint of this plaintiff presented a justi-

---

1. The Court is also aware that the Attorney General regularly interprets State criminal laws and decisions in published opinions and circulars to State judges and law enforcement officers.

ciable controversy, these motions are directed toward obtaining information which is not relevant to the case. Accordingly, they are denied.

## JURISDICTION

A. *Substantial Constitutional Question.*

A three-judge court was convened pursuant to 28 U.S.C.A. §§ 2281 and 2284. Such action is proper where plaintiffs attack the constitutionality of a state statute, raising a substantial constitutional question, and seek equitable relief against its enforcement. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962).

Plaintiffs here attack the constitutionality of Ga. Code Ann. § 26–1201 et seq. (1969) on the grounds that it infringes rights protected by various Amendments to the United States Constitution. They seek an injunction against enforcement. In light of recent cases on the subject of the Constitutional right to an abortion, this Constitutional question appears substantial. *See* Roe v. Wade, 314 F.Supp. 1217 (N.D.Tex., June 17, 1970); Doe v. Randall, 314 F.Supp. 32 (D.Minn., May 19, 1970); Doe v. Scott, 310 F.Supp. 688 (N.D.Ill., March 27, 1970); Babbitz v. McCann, 310 F.Supp. 293 (E.D. Wis.1970); United States v. Vuitch, 305 F.Supp. 1032 (D.D.C.1969), app. docketed, No. 1155 (February 5, 1970); California v. Belous, 71 Cal.2d 954, 80 Cal.Rptr. 354, 458 P.2d 194 (1969), cert. den. 397 U.S. 915, 90 S.Ct. 920, 25 L. Ed.2d 96 (1970).

B. *Justiciability.*

### Standing

By motion to dismiss, Lewis R. Slaton, District Attorney of Fulton County, contends that all plaintiffs other than Mary Doe lack standing to maintain this action. The basis for the claims of these plaintiffs is that because they are not free to perform or counsel the obtaining of abortions, they are unconstitutionally restricted in the practice of their professions.

There are certainly instances in which any of these plaintiffs would have standing to claim a constitutional right to practice his profession, and infringement thereof. For instance, few would dispute that a social worker being prosecuted for conspiracy because he (or she) counselled obtaining an abortion, and referred the client to a physician for the abortion, would have standing to seek a declaratory judgment of his (or her) asserted constitutional right and infringement thereof. *See* Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L. Ed.2d 510 (1965).

But absent prosecution or indictment, that these plaintiffs do have standing is more difficult to see. Whether their claim is otherwise justiciable is irrelevant. Flast v. Cohen, 392 U.S. 83, 100 n. 21, 99 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The sole issue is whether there is a logical link between the status they assert (physician, nurse) and the claim they seek adjudicated, or between their status and both the type of enactment attacked and the nature of the constitutional infringement alleged. 392 U.S. at 102, 88 S.Ct. 1942.

■ Under either test, all the plaintiffs have standing. As physicians, nurses, ministers or social workers they attack a criminal statute potentially applicable to them, on the grounds that it unconstitutionally restricts their right to practice. Accordingly, the motion to dismiss for lack of standing is denied.

### Collision of Interests

■ Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies. And it is well established that in actions for declaratory judgments, a District Court may not render an advisory opinion on the constitutionality of a state statute. Rather there must be "exigent adversity," an actual controversy in which the constitutionality of the statute is drawn into question in a truly adversary context. *See* Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 22

L.Ed.2d 113 (1969); Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961); United Public Workers of America v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

Most akin to the instant case is Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). There, a married couple, a married woman and their physician sought a declaratory judgment that Connecticut's statutes prohibiting the use of contraceptive devices and the giving of medical advice in the use of such devices violated plaintiffs' Fourteenth Amendment rights, depriving them of life and liberty without due process of law. None of the plaintiffs had been indicted or prosecuted under the statutes. There had been only one recorded prosecution for violation of the statutes in the seventy-five years since their enactment, and that single instance occurred twenty years before the declaratory judgment action was brought. The Supreme Court suggested that the lack of a pending prosecution or immediate threat of such prosecution against the particular plaintiffs made the claims non-justiciable, citing United Public Workers of America v. Mitchell, 330 U. S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). Poe v. Ullman, 367 U.S. at 501, 81 S.Ct. 1752. But the Justices went on to find that the lack of recorded prosecutions, the unchallenged, open, ubiquitous public sales of contraceptive devices showed a deeply embedded State policy against enforcement, amounting to a tacit agreement not to prosecute violators of the statutes. The majority therefore held:

> "It is clear that the mere existence of a state penal statute would constitute insufficient grounds to support a federal court's adjudication of its constitutionality in proceedings brought against the State's prosecuting officials if real threat of enforcement is wanting." 367 U.S. at 507, 81 S.Ct. at 1758.

However, these three cases seem precedent for the proposition that in the absence of a pending or threatened indictment or prosecution of the particular plaintiffs bringing a declaratory judgment action, a federal court cannot consider the constitutionality of the challenged criminal statute.

However in 1968, the Supreme Court decided Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), in which a public school teacher argued that the Arkansas statute prohibiting the teaching of evolution was unconstitutional. There was no pending or threatened indictment or prosecution against the teacher. There was no record of any prosecutions under the challenged statute. The teacher's dilemma was solely that (1) the new biology textbooks she was supposed to use in the approaching term contained a chapter on evolution, and (2) her action for a declaratory judgment in state court, granted on the trial level, had been reversed by the Arkansas Supreme Court. The United States Supreme Court majority reached the merits and reversed the decision of the Arkansas Supreme Court in an opinion which summarily brushed aside the question of justiciability. 393 U.S. at 101–102, 89 S.Ct. 266. Apparently, then, the majority felt that the appeal presented a "substantial controversy * * * of sufficient immediacy and reality." Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 959–960 (1969).

In the instant case, the plaintiff Mary Doe alleges that having properly applied to the Abortion Committee of Grady Memorial Hospital for a legal therapeutic abortion allowed by Ga. Code Ann. § 26–1202 (1969), she was denied an abortion solely on the grounds that her present situation did ·not come within the terms of Ga. Code Ann. § 26–1202(a) (1) (1969).

Georgia's Abortion Act defines a criminal abortion as the act performed by a person who administers a substance or uses an instrument or other means with intent to produce a miscarriage or abortion. Ga. Code Ann. § 26–1201 (1969). However, Ga. Code Ann. § 26–1202(a) establishes three circumstances

under which an abortion shall not be considered a criminal abortion. And Ga. Code Ann. § 26–1202(b) (1969) prescribes procedure which *must* be followed if an abortion is to be authorized by or performed under 1202(a).

Ga. Code Ann. § 26–1202(b) (1969) provides in relevant part:

"No abortion is authorized or shall be performed under this section unless each of the following conditions is met:

\*　　\*　　\*　　\*　　\*　　\*

(5) The performance of the abortion has been approved in advance by a committee of the medical staff of the hospital in which the operation is to be performed. This committee must be one established and maintained in accordance with the standards promulgated by the Joint Commission on the Accreditation of Hospitals, and its approval must be by a majority vote of a membership of not less than three members of the hospital's staff; the physician proposing to perform the operation may not be counted as a member of the committee for this purpose."

■■ Thus, the denial of plaintiff's application for an abortion, on the grounds alleged, was not the decision of a private physician declining to render professional services, occasioned by the mere existence of Georgia's Abortion Act. The statute confers upon the hospital committee power to grant or deny abortions. A decision denying an application for abortion on the ground that the woman's situation does not fall within one of the three enumerated exceptions is an exercise of that power, which allegedly violated plaintiff's constitutional rights. To this extent then, this statute has been invoked against the plaintiff Mary Doe, causing an alleged constitutional deprivation. Here, there has been actual interference with a claimed constitutional right by the decision of a body which the State has vested with power to grant or deny legal abortions. These circumstances put plaintiff and the defendants on opposite sides of a very real and lively controversy, amenable to judicial resolution.

Accordingly, it appears that Mary Doe's complaint, in this context, presents a justiciable controversy. Since the claims of the other plaintiffs do not stand in such a posture, the Attorney General's motion to dismiss must be granted to that extent.

## C. *Exhaustion.*

■ There is no merit to the defendant Slaton's motion to dismiss for failure to exhaust state remedies. It does not appear that there are any administrative remedies for the denial by a hospital committee of an application for an abortion. And however desirable such a requirement might be for orderly judicial administration, there is no requirement that a litigant in federal court exhaust state judicial remedies, where he is asserting a claim in proceedings other than *habeas corpus* involving a subject over which the federal and state courts have concurrent jurisdiction. As will appear below, the instant case does not involve granting injunctive relief.

## THE MERITS

■ Plaintiff asserts that certain cases leading up to and following Griswold v. Connecticut, 381 U.S. 479, 85 S. Ct. 1678, 14 L.Ed.2d 510 (1965) establish a Constitutional right to privacy broad enough to encompass the right of a woman to terminate an unwanted pregnancy in its early stages, by obtaining an abortion. *See* Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); Loving v. Virginia, 388 U. S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (dissenting opinion of Mr. Justice Brandeis); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). While the Court agrees that the breadth

of the right to privacy encompasses the decision to terminate an unwanted pregnancy, we are unwilling to declare that such a right reposes unbounded in any one individual. Rather, we are of the view that although the state may not unduly limit the reasons for which a woman seeks an abortion, it may legitimately require that the decision to terminate her pregnancy be one reached only upon consideration of more factors than the desires of the woman and her ability to find a willing physician.

In Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), the Supreme Court held that the decision to use contraceptive devices is an aspect of a relationship lying within a penumbral zone of privacy created by several fundamental constitutional guarantees, and that a state law forbidding the use of such devices unduly invades that area of protected freedoms with maximum destructive effect upon that relationship. 381 U.S. at 485, 85 S.Ct. 1678. In a concurring opinion, Mr. Justice Goldberg differed with the majority only to the extent stipulating that the right to marital privacy is encompassed in his concept of personal liberty because of the Ninth Amendment, rather than because of penumbral emanations of specific constitutional guarantees.

■ For whichever reason, the concept of personal liberty embodies a right to privacy which apparently is also broad enough to include the decision to abort a pregnancy.[2] Like the decision to use contraceptive devices, the decision to terminate an unwanted pregnancy is sheltered from state regulation which seeks broadly to limit the reasons for which an abortion may be legally obtained. However, unlike the decision to use contraceptive devices, the decision to abort a pregnancy affects other interests than those of the woman alone, or even husband and wife alone.

■ Once conception takes place and an embryo forms, for better or for worse the woman carries a life form with the *potential* of independent human existence.[3] Without positing the existence of a new being with its own identity and federal constitutional rights, we hold that once the embryo has formed, the decision to abort its development cannot be considered a purely private one affecting only husband and wife, man and woman.

A potential human life together with the traditional interests in the health, welfare and morals of its citizenry under the police power grant to the state a legitimate area of control short of an invasion of the personal right of initial decision.

■ The whole thrust of the present Georgia statute [4] is to treat the problem as a medical one. Such approach is reasonable and seemingly sound inasmuch as medical practitioners are in the best position by virtue of training to judge concurrently the basis as well as the risk inherent in such a decision. In this respect, the state moreover has a legitimate interest in seeing to it that the decisions—personal and medical—is not one

2.  We see no connection between this theory and the claimed unlimited right of a woman "to use her body in any way she wishes" read into Griswold by some. There are obvious limitations to the latter such as self abuse, *e. g.* disease, drugs, suicide, etc. and the rights of others in which the state clearly has an interest. Any such theory in its ultimate is flatly rejected.

3.  This view of the impact of conception on the decision not to have children implies that the distinction between a quick and unquick fetus, and even that between embryo and fetus is not relevant here.

And since the Court does not postulate the existence of a new being with federal constitutional rights at any time during gestation, the motion of Mr. Ferdinand Buckley for reconsideration of the order revoking his appointment as guardian *ad litem* for the embryo (or fetus) is denied. Mr. Buckley's motion to intervene in such capacity is also denied. However, he has the Court's appreciation for his participation in this litigation as *amicus curiae*.

4.  Apparently patterned after the American Law Institute, Model Penal Code § 230.3 (Proposed Official Draft, 1962)

undertaken lightly and without careful consideration of all relevant factors, whether they be emotional, economic, psychological, familial or physical. For example, the legislature might require any number of conditions such as consultation with a licensed minister or secular guidance counselor as well as the concurrence of two licensed physicians or any system of approval related to the quality and soundness of the decision in all its aspects. It certainly has a clear right to circumscribe a decision made by a woman alone or by a woman and a single physician and to guard against the establishment of transient "abortion mills" by the occasional opportunistic or unethical practitioner and the concomitant dangers to his patrons and the public. Such controls and requirements, so long as they do not restrict the reasons for the initial decisions and do not violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment, are properly within the sphere of legislative discretion. In that respect, where abortions may be obtained only from licensed physicians and surgeons, and only after psychiatric consultation, the mere fact that physicians and psychiatrists are more accessible to rich people than to poor people, making abortions more available to the wealthy than to the indigent, is not in itself a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Cf.* Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); MacQuarrie v. McLaughlin, 294 F.Supp. 176 (D.Mass. 1968), aff'd 394 U.S. 456, 89 S.Ct. 1224, 22 L.Ed.2d 417 (1969).

Moreover, there is an overriding interest in the manner of performance as well as the quality of the final decision to abort. Obvious need for control through licensing, sanitation requirements and proper medical standards in the execution of a legal abortion are ex-

amples. Again such decisions address themselves to legislative decision based upon informed judgment.

■ Having decided that the reasons for an abortion may not be proscribed, but that the quality of the decision as well as the manner of its execution are properly within the realm of state control, the present statute must be examined in such light.

Rather than regulating merely the quality of the decision to have an abortion, and the manner of its performance, the Georgia statute also limits the number of reasons for which an abortion may be sought. This the State may not do, because such action unduly restricts a decision sheltered by the Constitutional right to privacy. *See* Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); California v. Belous, 71 Cal.2d 954, 80 Cal.Rptr. 354, 458 P.2d 194 (1969), cert. den. 397 U.S. 915, 90 S.Ct. 920, 25 L.Ed.2d 96 (1970). The question becomes a matter of statutory overbreadth.

■ Based upon the above, the court finds the following portions of Georgia Code § 26–1202 to be in violation of the constitutional rights of petitioner:

A. Section (a) beginning with the word "because" on line 5 and through subsection (a) (3) in its entirety.

B. Section (b) subsection (3) beginning with the word "because" on line 6 and through the end of said subsection.

C. Section (b) subsection (6) in its entirety.

D. Section (c) in its entirety.

There being no showing to the contrary, the court further finds the remainder of said Code § 26–1202 to constitute a proper exercise of state power within the context of this opinion.[5]

5. It is not thereby implied that those provisions constitute the only or best means of state control. On the whole, the present system appears unnecessarily cumbersome, a potential hazard under due process and equal protection considerations.

An appropriate formal declaratory judgment may be presented upon request of any party.

## ABSTENTION

It is recognized that there is no pending state court proceeding against which the injunction prayed by plaintiff would operate. Nevertheless, the request for injunctive relief is denied, on the same basis as such a prayer would be denied were a state proceeding actually in progress:

"* * * the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted * * * that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court." City of Greenwood v. Peacock, 384 U.S. 808, 828, 86 S.Ct. 1800, 1812, 16 L.Ed.2d 944 (1968).

However under the authority of Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), the Court has proceeded to issue the declaratory relief, in spite of its unwillingness to broadly enjoin future prosecutions under the Act. Accordingly, plaintiff's request for a declaratory judgment is hereby granted. Judgment shall issue in the form described above.

It is so ordered.

## SUPPLEMENTAL OPINION

Since the Court's opinion of July 31, 1970, several motions have been filed necessitating this opinion and order.

## MOTION OF AMICUS CURIAE

Ferdinand Buckley filed a motion on September 3, 1970, to alter or amend the Court's judgment of August 25, 1970, to rule on several of his earlier motions and prayers. Accordingly, that judgment is hereby amended in the following (See FN) respect:

Mr. Buckley's motion for reconsideration of the order revoking his appointment as guardian *ad litem* for the embryo (or fetus), and his motion to intervene in any representative capacity on behalf of the embryo or fetus is denied. This ruling makes it unnecessary, and the Court declines, to rule on the prayers in the answer and counterclaim Mr. Buckley filed before revocation of his appointment as guardian *ad litem*.

## MOTIONS OF JANE ROE

Jane Roe petitions for leave to intervene as a plaintiff, moves for a temporary restraining order, and asks that the Court clarify and enforce its opinion of July 31, 1970. Said petition, and accordingly also the motion and the request are denied for two reasons.

First, the Court is informed by counsel for all concerned that Georgia Baptist Hospital has reconsidered its earlier decision and subsequently granted Jane Roe's application for an abortion. Said action renders the petition of Jane Roe moot, there now being no sufficient collision of interests between Jane Roe and the defendants.

Second, Jane Roe's petition to intervene makes it clear that her controversy was with Georgia Baptist Hospital, and only tangentially with the defendants in this case. Under such circumstances there is no showing that Mary Doe—representing the class of pregnant women denied abortions because of the Georgia statute attacked—could not adequately represent the tangential interest of Jane Roe in this action. *See* Allen Calculators, Inc. v. National Cash Register Co., 322 U.S. 137, 141, 64 S.Ct. 905, 88 L.Ed. 1188 (1944); Durkin v. Pet Milk Co., 14 F.R.D. 374 (W.D.Ark.1953).

In spite of the above, the motion presents an aspect of the case which justifies some amplification of the previous declaratory judgment. The court concludes that this should be done by way of amendment sua sponte. Rule 60(b)(6); Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1948); Bros. Incorporated v. W. E.

Grace Mfg. Co., 320 F.2d 594 (5th Cir. 1963).

The problem relates to the role and function of the "abortion committees" in the several hospitals. Ga. Code § 26–1202b(5). The thrust of the original opinion was to carry out the apparent intent of the Georgia legislature by making the ultimate decision on individual abortions a medical one. However, in line with constitutional principles, the ultimate decision cannot be restricted to the three reasons stated in the statute. This left the abortion committee free to decide whether an abortion was "necessary" on the broader medical basis, namely, the totality of circumstances surrounding each patient.

From the motion it is apparent that those committees who have voluntarily adopted the standards promulgated by the American College of Obstetricians and Gynecologists as controlling have placed themselves in the position of being restricted by the same reasons stated in the statute.[1] What is denied directly cannot be accomplished indirectly. It follows that the abortion committees cannot be limited to the stated reasons as the sole basis for approval of an individual abortion, nor can they so limit themselves by the adoption of such standards. Any such action by a hospital committee is declared to be an unconstitutional exercise of delegated power.

In sum, the statutory processes of approval are left standing. The patient is required to obtain the approval of (1) the certifying physician, (2) the two consulting physicians, and (3) the abortion committee of the admitting hospital. Failure to obtain approval at any level necessarily precludes abortion on that application. A majority of the abortion committee shall control its action, whether for approval or for disapproval.

To the extent stated herein, the original opinion is modified.

It is so ordered.

---

[1]. The Georgia statute requires the hospital to apply standards promulgated by the Joint Commission on the Accreditation of Hospitals. No such restrictive reasons for approval of an abortion are contained therein. However, the voluntary standards promulgated by the American College of Obstetricians and Gynecologists in part limit the grounds for abortion to the three stated statutory reasons: injury to health of the mother; danger of grave physical or mental defect to the child; and pregnancy due to rape. Any such 'limiting restrictions, as seen, must fail. Likewise, lack of consent by the husband, while it may freely be considered by the committee, may not be automatically established as an absolute bar.

By way of additional comment, good faith administration of the statute as now constituted would prohibit a committee from secretly restricting abortions to those statutory reasons, which the court has already deleted. To the contrary, all relevant factors should be considered and an informed medical judgment made.