**James TODD et al., Plaintiffs,**

**v.**

**OKLAHOMA STATE DEMOCRATIC CENTRAL COMMITTEE et al., Defendants.**

**Civ. No. 73–50–D.**

United States District Court, W. D. Oklahoma, Civil Division.

June 29, 1973.

Henry W. Floyd, James L. Barrett, Oklahoma City, Okl., for plaintiffs.

Cecil G. Drummond, Pawhuska, Okl., Larry D. Patton, Oklahoma City, Okl., for Okl. St. Demo. Central Comm. and Thompson.

Larry Derryberry, Atty. Gen., Robert H. Mitchell, Oklahoma City, Okl., for Hall and Derryberry.

Before HILL, Circuit Judge, and EU-BANKS and DAUGHERTY, District Judges.

## MEMORANDUM OPINION ON MO-TIONS TO DISMISS OF ALL DE-FENDANTS AND ORDER

PER CURIAM.

This is an alleged class action wherein this three-judge court was convened pursuant to 28 U.S.C. §§ 2281, 2284. The Plaintiffs are Democratic electors. They claim that their constitutional right as Democratic electors of "one person one vote" has been invalidly diluted. They seek declaratory and injunctive relief in two counts against Oklahoma

State Democratic Central Committee; Guy Thompson, Chairman of the State Democratic Party; David Hall, Governor of the State of Oklahoma; Larry Derryberry, Attorney General of the State of Oklahoma. Each Defendant has moved to dismiss.

Political parties are voluntary organizations in Oklahoma. A political party in Oklahoma is defined as "an affiliation of electors representing any political organization which, at the next general election preceding, polled for President or Governor at least five per centum of the entire vote cast for either of said respective officers, or any such political organization which may have polled at least ten per centum of the vote of as many as three other states at the last election held in such states." 26 O.S. § 111. The statutes further provide that "political parties in this state shall select or nominate their respective candidates for the various national, state, district, county and township offices by a primary election or elections. . . ." 26 O.S. § 112a.

The organization of the Democratic Party of Oklahoma is structured by the constitution of the party. The organizational structure is as follows:

1. A Precinct Committee consisting, among others, of a Precinct Chairman, Co-chairman, and Secretary-Treasurer, elected by the Democratic electors of the precinct.

2. A County Central Committee for each county, consisting of the Precinct Chairmen and Co-chairmen, and the County Chairman, Co-chairman and Secretary-Treasurer.

3. A Congressional District Committee for each congressional district within the state, consisting of the County Chairmen and Co-chairmen of each county within the congressional district and the Congressional District Chairman, Co-chairman and Secretary-Treasurer.

4. A State Central Committee consisting of the County Chairman and Co-chairman of each county, the Congressional District Chairman and the District Co-chairman of each congressional district within the state; and a State Chairman, State Co-chairman and State Secretary-Treasurer. The last three are elected by the State Central Committee.

At the precinct level all duly qualified Democrats of the precinct are permitted to vote. At the county level, however, only precinct chairmen and co-chairmen in the county can vote for County Chairman, Co-chairman and Secretary-Treasurer. At the Congressional District level, only the chairmen and co-chairmen of the counties in the Congressional District can vote for the Congressional District Chairman, Co-chairman and Secretary-Treasurer. At the state level, only the county chairmen and co-chairmen of the seventy-seven counties in the state, and the Congressional District Chairmen and Co-chairmen can vote for the State Chairman, Co-chairman and Secretary-Treasurer.

The foregoing structural organization and rules of the Democratic Party of Oklahoma are mandated by the constitution of the Party and not by state statute. The existence of the Defendant State Democratic Central Committee is recognized by statute in that there is a statutory State Election Board of three members of whom the State Central Committee of each of the two political parties casting the highest number of votes at the last general election for state offices *"have the privilege of selecting and presenting to the Governor* . . . the name of as many as five electors, from which said committee *may request the Governor to name one* which shall be the representation to be accorded to its party upon said election board. . . ." 26 O.S. § 12. The State Election Board also selects the secretaries of the County Election Boards. 26 O.S. § 21. The County Election Boards "create, alter, divide and discontinue voting

precincts . . . as in their judgment is best and proper" providing, however, that a precinct must "embrace a minimum of [250] and a maximum of [600] electors." 26 O.S. §§ 25, 102.2. And if a party nominee for state office should die or decline to stand as the party nominee Defendant State Democratic Central Committee may fill the vacancy. The constitutionality of the foregoing statutes is attacked by the Plaintiffs in a two-count Complaint.

Count One alleges that "all members of the Defendant Central State Democratic Committee are elected on a disproportionate population (sic) basis," in that each precinct, regardless of the number of registered electors, elects a Chairman and Co-chairman who, as members of the County Central Committee, elect the Chairman and Co-chairman thereof, and also elect the Chairman and Co-chairman of the Congressional District Committee, which County and District Chairmen and Co-chairmen are members of the Defendant Oklahoma State Democratic Central Committee. "WHEREFORE, Plaintiffs pray that this Court declare the process by which the Constitution of the Oklahoma State Democratic Party selects the members of the State Central Committee to be null and void as a violation of the one person, one vote rule of the Fourteenth Amendment of the United States Constitution."

Count Two of the Complaint alleges that the Governor and Attorney General are responsible for the enforcement of the laws of the State by their oath of office and as such have permitted the County Election Boards of the several counties to draw precinct lines as authorized by statute in a disproportionate manner so as to dilute the votes of the Plaintiffs in the selection of the members of the Defendant State Central Committee. "WHEREFORE, Plaintiffs pray that this Court grant a temporary injunction and a permanent injunction ordering the Defendants Hall and Derryberry to declare the present apportionment of precincts in Oklahoma as being violative of the one person, one vote principle and to specify to the County Election Boards of each county in the State of Oklahoma to reapportion each precinct of each county as nearly as possible on the basis of one person, one vote."

Count One complains of the method of selection, under the Constitution of the Democratic Party, of the Defendant Oklahoma State Democratic Central Committee and Chairman of said Committee, Defendant Guy Thompson. The Plaintiffs predicate Count One on the doctrine of Baker v. Carr, 1962, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 and its progeny, Reynolds v. Sims, 1964, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; Wesberry v. Sanders, 1964, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481; and Gray v. Sanders, 1963, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821, alleging that there is a gross disproportion in the number of Democratic electors in the various precincts in the several counties of the State. It is to be noted that the precinct lines were drawn by the County Election Board, 26 O.S. § 25, and that the party organization has nothing to do with laying out the precincts. Baker v. Carr, supra, simply held that a case involving "dilution" of a voter's right of suffrage presented a justiciable question under the Equal Protection Clause of the Fourteenth Amendment. The case affords no protection to one who has no right to vote for the members of the Defendant Committee because there is no right to be diluted.

■ The Defendant Committee members and Defendant Chairman are not public "officers" within the compass of 28 U.S.C. § 2281. They were elected at the state level by County and Congressional District officers of the Democratic party. No registered Democratic voter, per se, had any right to vote for them. The Committee was not and is not established by law. The members are not among the named offices on the party primary or the general election ballots to be nominated or elected by the voters. The Committee members and Party Chairman are functionaries of a

private organization. They are chosen in accordance with the party's constitution and rules as set out above and are in no sense public officials.

Under the constitution of the Democratic Party the Committee is the supreme governing body of the Democratic Party organization. All other organizations in the state having a purpose similar to the purpose of the Committee are subordinate to the said Committee and must work through and under its direction. The Committee has the direction and control of all campaigns carried on for and on behalf of the Democratic Party within the state. The Defendant Thompson, as Chairman of said Committee, has the general direction and control of the campaigns and affairs of the Party subject to the suggestions of the subject Committee. In certain extraordinary and emergency situations, where death or withdrawal of a candidate nominated by primary, causes a vacancy in a party nomination, the Committee makes a substitute nomination for the party.

The Plaintiffs argue that inasmuch as only the Precinct Chairmen and Co-chairmen vote for the County Chairmen and Co-chairmen, who, in turn, vote for the Congressional District Chairmen and Co-chairmen, which County and Congressional District Chairmen and Co-chairmen, in turn, vote for the Defendant Committee, that the system of electing the County, Congressional District and Defendant State Democratic Central Committee deprives Plaintiffs of the equal protection of the laws. They rely on Gray v. Sanders, supra, wherein the Court invalidated, as a denial of the equal protection of the laws, a county unit scheme of voting in primary elections as used in Georgia for choosing party nominees for state-wide executive and legislative offices. Under the scheme, the relative voting strength assigned to the several Georgia counties was greatly disproportionate to the distribution of population among the counties.

Gray v. Sanders, supra, is not controlling herein. In denying the applicability of Gray v. Sanders, supra, in Lynch v. Torquato, 1964, C.A.3, 343 F.2d 370, Circuit Judge Hastie said:

> For present purposes we may assume that the same principle would control a precinct unit scheme of voting to choose party nominees for county-wide executive and legislative office . . . However, the contention of the plaintiffs is that the umbrella of the equal protection clause covers an even wider area. For the matter in controversy here is the choice not of county officers, but of a Democratic County Committee and a Democratic County Chairman, the party functionaries empowered to administer the local affairs of the Democratic party.
>
> . . . the citizen's constitutional right to equality as an elector, as declared in the relevant Supreme Court decisions, applies to the choice of those who shall be his elected representatives in the conduct of government, not in the internal management of a political party. It is true that this right extends to state regulated and party conducted primaries. However, this is because the function of primaries is to select nominees for governmental office even though, not because, they are party enterprises. The people, when engaged in primary and general elections for the selection of their representative in their government, may rationally be viewed as the "state" in action, with the consequence that the organization and regulation of these enterprises must be such as accord each elector equal protection of the laws. In contrast, *the normal role of party leaders in conducting internal affairs of their party, other than primary or general elections, does not make their party offices governmental offices or the filling of these offices state action* which must satisfy the requirements of Gray v. Sanders [supra]. [Emphasis added]

There, as here, it was argued that in naming an emergent nominee, when a state-wide governmental office becomes

vacant as a result of the death or disqualification of a party nominee between primary time and election time, the Committee was exercising a constitutionally protected function of the party electorate and, therefore, could constitutionally do so only if the committee had been chosen by a process which respected the one man, one vote principle. In rejecting the argument, Circuit Judge Hastie, said:

> For even if it should be unconstitutional for party leaders chosen in an undemocratic manner to make emergency designations of party nominees for governmental office, it does not follow that these party leaders are contitutionally disqualified from performing their many and varied normal functions of administering the party business. A party chairman may perform these functions throughout his term of office without ever having occasion to select a substitute nominee for governmental office.
>
> If the plaintiffs' theory of the application of the equal protection concept to emergency nominations is sound, it might arguably support a proceeding to restrain undemocratically chosen county officers from making such nominations. But that is not this case. Rather, *the complaint is a general challenge to the right of a person who has not been selected in accordance with the one man one vote principle to serve as party County Chairman. The nature of the office and its normal responsibilities make this claim much too broad for constitutional validity.*
>
> In our view the only relief to which the plaintiffs might have an arguable constitutional claim would be an order restraining a County Chairman chosen in an undemocratic way from making party nominations for elective public offices. But it is not alleged that the County Chairman has made any such nomination or that the unusual situation has arisen in which he is authorized to do so. Thus, neither a violation of the plaintiffs' rights as voters

nor the imminent prospect of such a violation appears in this case. Indeed, this lawsuit appears to be an effort of dissidents to wrest control of ordinary party affairs from present leadership rather than an attempt to vindicate the plaintiffs' right to share equitably in the choice of nominees for public office in some emergency situation which may never arise. Thus, an anticipatory solution of a possible future controversy of constitutional dimensions is urged upon us as a justification for judicial intervention in a present controversy which involves no actual or imminently threatened violation of constitutional rights.

(2) In these circumstances, this is very clearly a proper case for judicial abstention from constitutional decision pursuant to the wholesome and authoritatively accepted principle that "federal judicial power is to be exercised to strike down legislation . . . only at the instance of one who is himself immediately harmed, or immediately threatened with harm, by the challenged action." Frankfurter, J., in Poe v. Ullman, 1961, 367 U.S. 497, 504, 81 S.Ct. 1752, 1756, 6 L.Ed. 2d 989. [Emphasis added]

Likewise in the case at bar the Complaint neither alleges that the Defendant Committee has made or is threatening to make, any nomination of replacement nor that an unusual situation has arisen in which the Defendant Committee is authorized to do so. In truth, the Complaint is devoid of any allegation that the Defendant Committee throughout its lengthy history has ever made such a nominee replacement. This Court adheres to the sound doctrine which disapproves the anticipation of constitutional questions and finds that the Motion to Dismiss of each Defendant should be sustained.

The holding in Seergy v. King's County Republican County Committee, C.A.2, 1972, 459 F.2d 308, is not to the contrary. There, as here, the Complaint alleged that the Plaintiff's constitutional right of one person, one vote had been

invalidly diluted. But there, unlike here, the Election Law of the state prescribed the manner in which state and county party committees are to be established and further provided that the county committee should consist of two members elected from each election district within the county and also that the voting power of each member thus elected should be in proportion to such party vote in his election district. The Election Law provided, however, that each county committee might adopt an alternative election procedure whereby additional members, up to four, might be elected from each county election district and that, in the counties adopting this alternate each member of the county committee should have one vote.

The Defendant King's County Republican County Committee adopted the alternative statutory procedures for the election of its county committeemen. Thus each county committeeman had an equal instead of a weighted vote which he would have had if the subject committee had adopted the first statutory alternative and had limited each county election district to two committeemen. Because of the wide disparities in the Republican voter strength among the election districts in King's County the committeemen from election districts in the county with low Republican enrollment exercised a voting strength much greater than the proportionate strength of the Republican voters they represented. It was this failure to accord voting weight in proportion to the voting strength of each committeeman's constituency that was attacked by the Plaintiffs in *Seergy*, supra, as violative of the one man, one vote principle. In short, the Plaintiffs therein contended that in all county committee matters they were entitled in effect to the equivalent of one Republican, one vote.

The Court declined to adopt the argument as respects the Defendant Committee's internal affairs. The Court said that the Equal Protection of the Law Clause does not mandate the adoption by the Committee "of weighted voting in the performance of their major duty and function as committeemen, which is to conduct the internal management and business of the county committee. Whatever its reason for giving disproportionate weight to the vote of some committeemen in such matters  .   .   . when the county committee acts only as a private voluntary association of citizens, it is no more bound by the constitutional duty to weigh committee members' votes according to the number of constituents represented by them than is any other private club." It was only as to the extent that Section 12 of the Election Law of the state authorized disproportionate voting by committeemen in their infrequent performance of public electoral functions that the statute was violative of the one man, one vote principle. The Court held only that "the second alternative allowed by § 12 of the Election Law, as implemented by the Art. 1, § 1, King's County Republican County Committee Rules, is invalid as applied to those rare instances where the committee performs a public electoral function." p. 315.

The Court finds no provision, in the laws of Oklahoma, either identical or comparable to those of the New York Election Law, McKinney's Consol.Laws, c. 17, involved in *Seergy*, supra. It follows that the case is clearly distinguishable from the case at hand.

Likewise the holding in Grimes v. Commonwealth of Kentucky, C.A.6, 1971, 451 F.2d 1353 [erroneously cited as 362 F.2d 1353], relied on by plaintiffs, is not contrary to our holding herein. There the Governor of Kentucky had called a special election for December 4, 1971, to fill a congressional vacancy caused by death. The Republican and Democratic nominees had been selected by the governing authorities of the respective parties as authorized by statute. Suit was filed to enjoin the holding of the special election alleging violation of the "one man, one vote" principle under the Equal Protection of the Law Clause of the Fourteenth Amendment.

The District Court declined to issue an injunction and dismissed the action. Thereupon the Plaintiffs moved, in the Circuit Court of Appeals, for injunction pending appeal. In declining to issue the injunction the appellate court said:

> This court declines to issue an injunction at this late date [Nov. 30, 1971] which would result in "serious disruption of election process" . . .
> The motion for injunction pending appeal is denied.

There, unlike here, a congressional vacancy existed. An election to fill the vacancy was impending. The party nominees had been selected. The case is clearly distinguishable, both on the facts and on the law, from the case at bar. It is not controlling herein.

Count Two is directed against Defendant Governor Hall and Defendant Attorney General Derryberry of the State of Oklahoma. Each is an "officer" within the meaning of 28 U.S.C. § 2281. Defendant Governor Hall is the Chief Magistrate in whom is vested the supreme executive power. The Oklahoma Constitution decrees in Article VI, §§ 2, 8, that the Governor "shall cause the laws of the State to be faithfully executed." Defendant Derryberry is "the Chief Law Officer of the State." 74 O.S. § 18b. His duties are explicated in the statutes. While it is his duty "to appear for the State and prosecute and defend all actions and proceedings in any of the Federal courts in which the State is interested as a party" and to perform certain acts upon the request of the Governor, the Legislature, and designated administrative agencies, there is no duty imposed on him respecting the statutes herein attacked as invalid. *Ibid.* Counsel for the Plaintiffs have cited none.

■■ It is well settled that 28 U.S.C. §§ 2281, 2284, under which Plaintiffs are proceeding, is a technical statute and must be strictly construed. Mitchell v. Donovan, 1970, 398 U.S. 427, 431, 90 S. Ct. 1763, 26 L.Ed.2d 378; Allen v. State Board of Elections, 1969, 393 U.S. 544, 561–562, 89 S.Ct. 817, 22 L.Ed.2d 1. It

does not suffice that a named defendant is an "officer" of the State of Oklahoma. Something more is required. He must be an officer charged with "the enforcement or execution" of the challenged statute. As early as 1899, in Fitts v. McGhee, 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535, wherein the Plaintiffs attacked the constitutionality of a state statute and the Court sustained an order dismissing the Attorney General of the state as a party defendant, Mr. Justice Harlan, speaking for a unanimous Court, said:

> In the present case, as we have said, *neither of the state officers named held any special relation to the particular statute alleged to be unconstitutional. They were not expressly directed to see to its enforcement.* If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former as the executive of the state was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the State in litigation involving the enforcement of its statutes. p. 530, 19 S.Ct. p. 274 [Emphasis supplied]

Ten years later, in Ex parte Young, 1909, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714, Mr. Justice Peckham, speaking for the Court, quoted the foregoing language from *Fitts*, supra, and, commenting on the naming of the Attorney General of the state as party defendant, said: "A state superintendent of schools might as well have been made a party." And, after noting the language above quoted from *Fitts*, supra, he said:

> In making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such

officer must have some connection with the enforcement of the act. . . . p. 157, 28 S.Ct. p. 453.

If the governor and attorney general of a state have no such connection, the cases uniformly hold that motions to dismiss as to them should be sustained. In Application of Jose Camacho v. Rogers, Governor Rockefeller, et al., D.C.S.D. N.Y., 1961, 199 F.Supp. 155, the Plaintiff sought, as here, declaratory and injunctive relief against the enforcement of the New York statutory and constitutional provisions requiring literacy in the English language as a prerequisite for eligibility to vote, and named the Governor and Attorney General of the State of New York as party defendants. The three-judge court sustained their motions to dismiss, because, the Court said: "They are not proper parties." p. 156. In Johnson, et al., v. Robinson, et al., D.C.E.D.Ill., 1969, 296 F.Supp. 1165; aff'd 394 U.S. 847, 89 S.Ct. 1622, 23 L. Ed.2d 30, a three-judge court dismissed the state Attorney General as a party defendant in a class action to enjoin enforcement of state statutes requiring an applicant for state welfare aid to have continuously resided for one whole year in the state immediately preceding his application for aid. The Court said:

> Defendant [Illinois' Attorney General], who seeks dismissal, has some duties under the welfare laws but those problems are not relevant to the problem presented here. . . . We grant the motion to dismiss as to defendant [Attorney General]. p. 1168.

In McCrimmon, et al. v. Daley, et al., C.A. 7, 1969, 418 F.2d 366, a class action for declaratory and injunctive relief alleged the invalidity of an ordinance of Chicago and the enabling state statute and named the Attorney General of Illinois as a party defendant. The Court said:

> It has long been held that before a state officer, here the Attorney General, may properly be made a party defendant to a suit to enjoin the enforcement of an act alleged to be un-

constitutional, he must have some connection with the enforcement of the act. [Citing cases]. . . . *A reading of this statute makes it plain that . . . the Attorney General is not charged with its enforcement . . . We hold the trial court properly dismissed the Attorney General of Illinois as a party defendant. . . .* " p. 368. [Emphasis added]

■ In response to these Defendants' motions to dismiss, the Plaintiffs argue that "Defendant David Hall, as Governor of the State, is given the power by 26 O.S. § 12, to select a member of the State Election Board from a list submitted by the Defendant State Committee" and that "he should be put on notice that his selection of choices is drawn from an unrepresentative body which is apportioned on the basis of geography and not population." And, as to both defendants, they further argue that "Their oath which specifies that they will 'obey' the Constitution would place on them an obligation to see to the proper enforcement of the laws of the State of Oklahoma and the United States Constitution."

The arguments do not aid the Plaintiffs. In Committee for Public Education, etc. v. Nelson A. Rockefeller, as Governor of the State of New York, et al., D.C.S.D.N.Y., 1971, 322 F.Supp. 678, the constitutionality of a New York statute appropriating money for the payment of nonpublic schools for certain expenses was challenged and the Governor was named a party defendant. The language of the court in sustaining a motion to dismiss filed by the governor is equally controlling herein. The Court said:

> *Plaintiffs* concede that the Governor has no specified duties as to [the challenged statute], but assert that *he has been joined as a defendant because he . . . is responsible* under Article 4, Section 3, of the New York Constitution *for the faithful execution of state laws . . .* and that the case should not be dismissed as to him.

Rule 21 of the Federal Rules of Civil Procedure provides in pertinent part: "Parties may be dropped or added by order of the court on motion of any party or of its own initative at any stage of the action and on such terms as are just."

In the circumstances of this case, it appears that the court's discretion should be exercised to drop Governor Rockefeller as a defendant . . . It is clear that, should the plaintiffs prevail, the full relief they seek can be afforded by the issuance of an injunction against [the authorities] who have the sole power and responsibility for the execution of [the statute]. In addition, *the grant of injunctive relief against the Governor, assuming arguendo it were merited, would be a futility*, since it is doubtful whether the Governor could exercise authority over [those charged with enforcement]. p. 686. [Emphasis added]

In responding to the motions to dismiss of Defendants Governor Hall and Attorney General Derryberry, the Plaintiffs rely on a line of cases wherein the Governor, Attorney General, or both, were named as parties defendant. In two of the cases cited, Jackson v. Colorado, 1968, D.C.Colo., 294 F.Supp. 1065, and Arneson v. Denny, D.C.Wash., 1928, 25 F.2d 993, neither the Governor nor the Attorney General was named a party defendant.

The remaining cases relied upon involved criminal statutes. Doe v. Bolton, S.D.Ga., 1970, 319 F.Supp. 1048, alleged the invalidity of abortion statutes. International Longshoremen's and Ware. Union v. Ackerman, D.C.Hawaii, 1948, 82 F.Supp. 65, alleged the invalidity of an unlawful assembly and riot act. Bevins, et al. v. Prindable, Sheriff, et al., D.C.E.D.Ill., 1941, 39 F.Supp. 708, aff'd, 314 U.S. 573, 62 S.Ct. 116, 86 L.Ed. 465, alleged the invalidity of a statute prohibiting the manufacture or sale of materials portraying lack of virtue of a class of citizens or exposing such citizens to contempt productive of breach of the peace or riot. Ex parte Young, supra, alleged the invalidity of statutory penalties for non-compliance with a rate-fixing statute. James v. Almond, D.C.E.D.Va., 1959, 170 F.Supp. 331, alleged the invalidity of a quasi-criminal statute—a public school desegregation case invalidating the "massive resistance" laws of the Old Dominion of Virginia. The Attorney General was named a party defendant. As to him, the Court said:

> As to the motion to dismiss the Attorney General of Virginia, it is our view that he is a proper party, although undoubtedly not what may be classified as a necessary party . . . to the end that there may be no misunderstanding of our ruling that the questioned statutes are unconstitutional . . . we conclude that the Attorney General is a proper party to this proceeding and should be included within the terms of an injunctive decree to be entered. pp. 341–342.

It clearly appears, therefore, that the authorities relied upon by the Plaintiffs, in response to the motions to dismiss of Defendant Hall and Defendant Derryberry, Governor and Attorney General, respectively, of the State of Oklahoma, are readily distinguishable and inapposite. The question at issue in each case was the validity of a criminal or quasi-criminal statute. The manifold differences between criminal statutes and non-criminal statutes and between the duties of the Governor, as the Chief Executive, and the Attorney General, as the Chief Enforcement Officer of the State, respecting these statutes, are too obvious to require citation of authorities.

The Court finds that the motions to dismiss of Defendant Hall and Defendant Derryberry should be sustained.

In summary, the Court finds that the Complaint does not state a justiciable issue as between the parties herein and should be dismissed.