**REPRODUCTIVE SERVICES, on behalf of itself, its staff, and its patients, Plaintiff,**

v.

**Frank KEATING, in his official capacity as Governor of the State of Oklahoma and his agents and successors in office, Defendant.**

No. 98–CV–447–H.

United States District Court, N.D. Oklahoma.

July 10, 1998.

Martha Moody Hardwick, Tulsa, OK, Priscilla Smith, Simon Heller, New York City, Suzanne J. Levitt, Tulsa, OK, for Plaintiff.

Linda L Samuel–Jaha, Office of the Attorney General, Oklahoma City, OK, J. Warren Jackman, Pray Walker Jackman Williamson & Marlar, Tulsa, OK, Guy Lee Hurst, Office of the Attorney General, Oklahoma City, OK, Charles Loy Richardson, Richardson & Ward, Dick Austin Blakeley, Linda Kay Greaves, District Attorney's Office, Tulsa, OK, Judy A. Terry, Office of the Attorney General, Oklahoma City, OK, for Defendant.

Charles L. Richardson, Tulsa, OK, Pro se.

William D. Graves, Oklahoma City, OK, for Amicus.

### *ORDER*

HOLMES, District Judge.

This matter comes before the Court on a motion for temporary restraining order and preliminary injunction by Plaintiff Reproductive Services (Docket # 1) challenging the constitutionality of a provision of the Oklahoma Public Health Code and regulations promulgated by the Oklahoma Department of Health, requiring that all abortions performed "subsequent to the end of the first trimester" be performed in general hospitals. Okla. Stat. tit. 63, § 1–731(B); Okla. Admin. Code §§ 310:600–1–1 *et seq.* Plaintiff filed a brief in support of its position. Defendant filed a motion to dismiss as well as a brief opposing injunctive relief. A hearing was held in this matter on July 9, 1998.

I

The Act in question was originally enacted by the Oklahoma legislature in 1978. In 1983, however, the Supreme Court declared unconstitutional essentially the same provisions in an Akron, Ohio city ordinance. *City of Akron v. Akron Ctr. for Reproductive Health, Inc.*, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983).[1] In 1984, the state at-

---

1. At the hearing in this matter, counsel for Defendant conceded that the instant Oklahoma law was substantially identical to the ordinance overturned by the Supreme Court in *Akron.*

torney general issued an opinion concluding the Oklahoma law was unconstitutional under this Supreme Court authority. Op. Atty. Gen. No. 83–182 (Feb. 29, 1984). As a result, to date the law has not been enforced by the Oklahoma Department of Health. In 1997, however, the Oklahoma Supreme Court reviewed the law and determined that it suffered from no constitutional infirmities in light of the Supreme Court's decision in *Planned Parenthood v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). *Davis v. Fieker*, 952 P.2d 505, 509 (Okla. 1997). The law was amended effective July 1, 1998, to provide that a violation constituted a felony. The regulations implementing the new law become effective July 13, 1998.

## II

■ Defendant has filed a motion to dismiss Plaintiff's complaint on the grounds that the Governor of Oklahoma is not the proper defendant in this action to enjoin the enforcement of a state criminal statute and/or a Department of Health regulation. Defendant relies upon *Ex Parte Young*, 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908) for its assertion that a state officer must have some connection with the enforcement of the act in question before that state officer may be sued in question of a statute's constitutionality.

The Oklahoma Constitution provides that "[t]he Governor shall cause the laws of the State to be faithfully executed ...." Okla. Const. art. 6, § 8. As a result, the Governor's connection to the statute in question here is not tangential. *See Allied Artists Pictures Corp. v. Rhodes* 473 F.Supp. 560, 568–69 (S.D.Ohio 1979) (discussing the continuum of relationships between governors and various statutes and finding that governor charged by Ohio Constitution to "see that the laws are faithfully executed" had sufficient enforcement connection with a statute to serve as party defendant), *aff'd*, 679 F.2d 656 (6th Cir.1982). Moreover, a careful examination of the cases cited by Defendant, in particular *Todd v. Oklahoma State Democratic Cent. Comm.*, 361 F.Supp. 491, 498 (W.D.Okla. 1973), reveals a distinction in the way courts

view actions questioning enforcement of a criminal statute from actions questioning the constitutionality of non-criminal regulations. *Todd*, 361 F.Supp. at 500.[2]

At this stage of the proceedings, and in light of this authority, the Court concludes that Defendant has not met his burden of demonstrating that the motion to dismiss should be granted. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Ash Creek Mining Co. v. Lujan*, 969 F.2d 868, 870 (10th Cir.1992) (to prevail on a motion to dismiss, the movant must establish that there is no set of circumstances upon which the plaintiff would be entitled to relief). Further, Plaintiff is entitled to respond to Defendant's motion to dismiss, or alternatively, to join additional parties to ensure that the constitutionality of the subject laws is properly before the Court. Therefore, for purposes of the temporary relief requested here, the Court finds Defendant is a proper party defendant.

## III

The Tenth Circuit requires a party seeking temporary injunctive relief to establish that (1) there is a substantial likelihood that Plaintiff will succeed on the merits; (2) Plaintiff will suffer irreparable injury unless the injunction issues; (3) the threatened injury to Plaintiff outweighs whatever injury caused to Defendant by the issuance of the injunction; and (4) if issued, the injunction would not be adverse to the public interest. Fed.R.Civ.P. 65; *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1370 (10th Cir.1997); *Walmer v. United States Dep't of Defense*, 52 F.3d 851, 854 (10th Cir.1995).

### A

■ As to the first element of the Tenth Circuit's test, Plaintiff contends that Supreme Court precedent demonstrates that it will likely succeed in its effort to have the Oklahoma statute and regulations declared unconstitutional. Plaintiff relies upon *City of Akron v. Akron Ctr., for Reproductive Health, Inc.*, 462 U.S. 416, 103 S.Ct. 2481, 76

---

2. Put another way, there is a distinction between statutes that regulate relationships between private parties and those that create "rights and relationships of substantial public interest." *Allied Artists*, 473 F.Supp. at 568–69.

L.Ed.2d 687 (1983) and *Planned Parenthood Ass'n v. Ashcroft*, 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983), wherein the Supreme Court invalidated laws in Ohio and Missouri, respectively, that required all abortions after the first trimester to be performed in a general hospital setting. In so holding, the Supreme Court stated that a

> second-trimester hospitalization requirement may force women to travel to find available facilities, resulting in both financial expense and additional health risk. It therefore is apparent that a second-trimester hospitalization requirement may significantly limit a woman's ability to obtain an abortion.

*Akron*, 462 U.S. at 435, 103 S.Ct. 2481. Citing these authorities, Plaintiff asserts that the Oklahoma laws at issue here place "a significant obstacle in the path of women seeking an abortion." Pl.'s Br. at 8 (citing *Akron*, 462 U.S. at 434, 103 S.Ct. 2481).

In support of this assertion, Plaintiff points out that there is shortage of abortion providers in the state of Oklahoma. Furthermore, there are only three hospitals within the state that allow abortions to be performed. Two of these hospitals restrict the procedure to those instances where a patient of a doctor with privileges at the hospital faces serious health risks. Therefore, according to Plaintiff, any requirement that second trimester abortions be performed in a general hospital will limit the total number of abortions in the state.

Plaintiff further asserts that there is no medical justification for the general hospital requirement.[3] Rather, Plaintiff contends that second-trimester abortions performed in Oklahoma under the new law will simply become more costly to women seeking an abortion because the procedure can only be performed in a more expensive health care facility.[4] Thus, Plaintiff contends, in practical effect, the new law will cause women either to incur greater costs for the procedure itself, or to seek abortion services out of state, with an attendant delay and arguably an attendant increase in medical risk. Plaintiff finally asserts that the increased burdens of which it complains will fall most heavily upon the poor, the young, and the uneducated.

Plaintiff maintains that the Supreme Court's holdings in *Akron* and *Ashcroft* have not been disturbed by the Court's subsequent decision in *Planned Parenthood v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). Therefore, the Oklahoma law must be overturned under *Akron*. Plaintiff further maintains that the Oklahoma law is unconstitutional under *Casey*. According to Plaintiff, under *Casey*, a court must determine whether an abortion restriction is an undue burden, or "has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus," *Casey*, 505 U.S. at 877, 112 S.Ct. 2791, and, Plaintiff asserts, the Oklahoma provisions do just that.

Finally, Plaintiff maintains that the laws are infirm because they are not designed to further the health or safety of a woman seeking an abortion. Moreover, according to Plaintiff, even if it were possible to construe some legitimate reason for the law, it would still be unconstitutional because its effect is to impose an undue burden upon women seeking abortion services.

With respect to the first of four elements that a plaintiff must show to gain temporary injunctive relief, the Tenth Circuit has determined that a party need only establish a prima facie case showing a reasonable probability that it is entitled to the relief sought. *Autoskill, Inc. v. National Educ. Support Systems, Inc.*, 994 F.2d 1476, 1487 (10th Cir. 1993). In short, Plaintiff must establish that it has "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Id.*

The Court concludes that Plaintiff has met this burden. It should be emphasized that this conclusion does not decide the question

---

3. Plaintiff claims that the new law departs from the accepted medical practice that most abortions through the twenty-second week of pregnancy are performed safely in a non-hospital setting.

4. Plaintiff claims that the cost for an abortion performed in a hospital in 1991 was approximately $1,539 while the non-hospital cost in 1993 was $604.

of whether *Casey* overruled *Akron* for purposes of the issues presented in this action. However, in light of the holding in *Akron,* and the fact that *Casey* does not expressly overturn that holding, the Court finds there is a legally sufficient basis upon which to maintain the status quo in this case until a complete record can be developed in the manner contemplated by *Davis v. Fieker.*

## B

■ Plaintiff asserts that the deprivation of a constitutional right constitutes irreparable injury in the context of the second element of the test enunciated in *Mitel.* Plaintiff further asserts that its providers are harmed in that they are unable to give proper medical treatment to their patients in the face of the Oklahoma law. Pl.'s Br. at 12.

Defendant contends temporary injunctive relief is a drastic remedy not warranted under these facts because Plaintiff's representatives attended one meeting and one public hearing regarding the rules it now challenges. Defendant contends that Plaintiff has remained silent for five months since the adoption of the rules that it helped to draft. Further, Defendant contends that Plaintiff has "failed to produce any evidence of specific harm caused since the adoption of these rules or any evidence to substantiate immediate harm." Def.'s Br. at 5–6.

Defendant cites no authority for its contention either that the mere participation in the rulemaking process should deny a party the right to challenge the constitutionality of a state law or that Plaintiff's failure to complain until the eve of enforcement of the regulations in question should bar the relief requested here. Accordingly, the Court rejects both contentions. It would create an odd incentive to deny Plaintiff the opportunity to bring this action because it had attempted to work within the agency rulemaking process. The Court, at this stage of the proceedings, cannot conclude that Plaintiff's delay constitutes conclusive evidence that it would be impossible for Plaintiff to demonstrate irreparable harm. Instead, the Court finds that Plaintiff has made a sufficient showing of irreparable harm. *See Planned Parenthood v. Citizens for Community Action,* 558 F.2d 861, 867 (8th Cir.1977) (finding that plaintiff's "showing that the ordinance interfered with the exercise of its constitutional rights and the rights of its patients supported a finding of irreparable injury.")

## C

■ Plaintiff asserts that the balance of harm test in *Mitel* favors its position because the state will not be harmed significantly by waiting for a determination as to the constitutionality of a law that has "laid dormant for almost fifteen years." Pl.'s Br. at 12. Indeed, unless the status quo is maintained, Plaintiff will face immediate risk of arrest if the law is enforced pending a determination as to its constitutionality.

The Court agrees that the balance of harm equation favors Plaintiff in this instance. The Court intends to address the legal issues in this case in an expeditious manner, thereby minimizing any potential harm to Defendant.

## D

■ Plaintiff asserts that the issuance of a temporary injunction will advance the interests of the public in that the injunction will prevent the possible violation of constitutional rights. Plaintiff further asserts that the injunction will safeguard the health interests of women who otherwise may face medical harm as a result of the implementation of the law.

Based upon the record available at this time, the Court agrees that maintaining the status quo until the constitutionality of the laws has been determined will advance the interests of the public. *See Llewelyn v. Oakland County Prosecutor's Office,* 402 F.Supp. 1379, 1393 (E.D.Mich.1975) (finding that grant of injunctive relief to film exhibitor against county attorney's seizure of film prior to its adjudication as obscene was in the public interest and stating that "it may be assumed that the Constitution is the ultimate expression of the public interest.")

## IV

The Court is unable to determine the merits of Plaintiff's claims at this stage of the proceedings. Therefore, the Court will set this matter down for a hearing to develop a

comprehensive record of the facts. Based on this record, and the legal authorities applicable to this case, the Court will decide whether the laws at issue "have the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." *Jane L. v. Bangerter*, 102 F.3d 1112, 1116 (10th Cir.1996) (citing *Casey*, 505 U.S. at 877, 112 S.Ct. 2791).

Pending the development of such record, the Court finds that, on the present facts, Plaintiff has satisfied the standards established by the Tenth Circuit and is entitled to temporary injunctive relief. Plaintiff's motion for a temporary restraining order (Docket # 1) is hereby granted.

This matter is set down for an evidentiary hearing with respect to Plaintiff's request for injunctive relief on Tuesday, August 18, 1998, at 1:00 PM. Absent agreement of the parties, temporary injunctive relief should expire within a shorter time period than permitted by this schedule. However, the Court has granted the request of Defendant for additional time to prepare for the evidentiary hearing. Accordingly, the parties have agreed to extend the temporary restraining order until the date of such evidentiary hearing.

For the reasons set forth above, the state of Oklahoma is hereby enjoined from enforcing Okla. Stat. tit. 63, § 1–731(B) and Okla. Admin. Code § 310:600–1–1 *et seq.* from the date hereof until the date of the evidentiary hearing presently scheduled in this matter for August 18, 1998.

IT IS SO ORDERED.